PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* LUIS ARROYO, Defendant and Appellant.

No. 3409.  Argued March 28, 1928.—Decided July 12, 1928.

*Juan B. Soto* and *Carlos M. Pesquera* for the appellant.  *José E. Figueras* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

M. Vega Riollano, District Chief of Police, made complaint against the appellant charging him with the following act as having been committed in Río Piedras on April 10, 1926: "Luis Arroyo, there and then, unlawfully, wilfully, maliciously and with the criminal intent of causing bodily injury to the young woman María Olivar, assaulted and battered her with his hands, grasping her violently by the arms and struggling with her."  As an aggravating circumstance it was alleged that the aggressor was an adult male and the victim was a woman.

After trial the court convicted the defendant of the crime of aggravated assault and battery and sentenced him to one year in jail.  Arroyo appealed to this court and assigns three errors in his brief.

In the second assignment it is contended that the court erred in allowing María Olivar to testify through an interpreter.

She was a deaf-mute.  It was sought to have her testify

through her mother who was a witness at the trial. The defendant objected and the court suspended the trial in order to give the prosecution an opportunity to get an interpreter. The case having been called again for trial, the prosecuting attorney presented as interpreter Eduardo Pons, assistant manager of the New York & Porto Rico S. S. Co., who has four deaf and dumb brothers with whom he communicates by signs and letters and who on several occasions has served as interpreter before the courts in similar cases. In our opinion his qualification was perfectly established.

The use of the interpreter is objected to because he said at first that he could not communicate with the witness. That is true; but it is also true, as is deduced from his statements, that he had not succeeded in winning her confidence and it seems that she refused to communicate with him. After some time a translation of the signs into words was so clear and definite and at the same time so peculiar that there is no doubt that it was the deaf-mute who was speaking through the interpreter.

In abstracting the jurisprudence Cyc. says:

"A deaf and dumb witness may be examined by means of written questions to which he gives written answers, or through the medium of an interpreter who communicates with him by means of signs, the method of examination resting largely in the discretion of the trial court." 40 Cyc. 2413.

Previously it had been said:

"Formerly the law considered deaf and dumb persons as idiots and held them incompetent as witnesses; but the modern rule is that the fact that a person has these infirmities does not render him incompetent, where he is of sufficient mental capacity to accurately observe the matters as to which he is to testify and to appreciate the obligation of an oath, and is able to communicate the facts by a method which his infirmity leaves available to him; although it is improper to receive the testimony of a deaf mute, who has never received any of the education suitable for such persons, and cannot be made to understand the obligation of an oath or the questions put to him." 40 Cyc. 2202.

In this case there was no question with regard to the mental capacity of the deaf and dumb witness.

The first and third assignments may be considered together. It is alleged that the evidence is insufficient, or that in any event it would be sufficient to show the existence of another crime, but in no way that of the crime charged against the appellant and of which he was convicted.

We know the charge. Let us examine the evidence.

María Olivar testified that "this man, referring to the defendant, is wicked; that he seized her by her hands and hair, bent her, kissed her on her neck and that she screamed and then her mother came; that he tore her dress and scratched her arm with his nails . . . ; that she pushed him back . . . ; that she refused . . . ; that she screamed and called her mother."

Maximina Díaz de Olivar, the mother of María, testified that she lived at stop 37 in Hato Rey, Río Piedras; that she had gone out of the house leaving there her daughter ironing some shirts of her brother; that she returned ten minutes later and on entering saw the defendant who had her daughter "grasped by her neck with his trousers unbuttoned and holding her, trying to hold her on his lap and she trying to free herself, both struggling." That she opened the window and called the neighbors. That her daughter is a deaf-mute and can utter only a few words.

Juana Zoila Rodríguez, a neighbor who was at the door of the house when Mrs. Díaz went in, testified among other things, that she saw that "he (the defendant) was holding her (the assailed) and that she was struggling backward as if trying to free herself, and he was pulling her as if to seat her on his lap."

Domingo Castillo testified that he saw Maximina and witness Rodríguez enter the house and immediately he heard her say: "See what an insolent, shameless and impudent man!" That immediately the defendant came out of the house

running and buttoning his trousers and went into his home nearby.

Norberto Jiménez the other witness testified more or less to the same effect. The complainant policeman testified that he had no direct personal knowledge of the facts. It appears from the birth certificate of the defendant that he was thirty-five years of age.

We agree that the evidence shows something more than assault and battery against a woman on the part of an adult male, but not that it is insufficient to convict the defendant of that crime.

The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is assault and battery, according to section 1 of an Act to punish simple assault, etc., of March 10, 1904, Comp. 1911, p. 908. And in this case whatever may have been the ultimate criminal intent of the defendant, it is evident that he assaulted and battered a human being with intent to injure her.

Section 286 of the Code of Criminal Procedure reads as follows: "The jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." And the fact is that the crime of rape by force or violence, and perhaps in any other form, includes that of assault and battery.

The case is not new either in practice or in the jurisprudence. Among the different kinds of assault there are those designated as *indecent assaults*. In referring to them Ruling Case Law says:

"An indecent assault has many of the elements of an assault with intent to rape but falls short of the latter in that there is no intent to commit the graver offense. An indecent assault consists in the act of a male person taking indecent liberties with the person of a female or fondling her in a lewd and lascivious manner

without her consent and against her will, but with no intent to commit the crime of rape." 2 R.C.L. 547.

The author continues to comment on the matter extensively. None of the defenses that might be alleged is present in this case. The evidence shows not only the act of the defendant, but also the resistance of the unfortunate deaf-mute.

The judgment appealed from must be affirmed.